353 So.2d 1127 (1977)
Janice GALLIEN, Plaintiff-Appellant,
v.
COMMERCIAL UNION INSURANCE CO. et al., Defendants-Appellees.
No. 6193.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1977.
Rehearing Denied January 12, 1978.
Writ Refused February 17, 1978.
*1128 Francis E. Mire, Lake Charles, for plaintiff-appellant.
Brame, Bergstedt & Brame, Joe A. Brame, Lake Charles, for defendants-appellees.
Before HOOD, CULPEPPER and FORET, JJ.
FORET, Judge.
This is a suit for damages for personal injuries, allegedly sustained by plaintiff, Janice Gallien, against Gravity Drainage District No. 4, Third Ward, Calcasieu Parish, Louisiana, and its public liability insurer, Commercial Union Insurance Company. A trial jury rendered a verdict rejecting plaintiff's demands, and judgment was signed accordingly. Plaintiff perfected an appeal to this Court.
On Tuesday, August 31, 1976, at approximately 9:45 A.M., at the northwest corner of Mill and Ryan Streets, Lake Charles, Louisiana, plaintiff-appellant, Janice Gallien, a young, unmarried woman, who weighed approximately a hundred or so pounds, alighted from a bus, walked toward the sidewalk adjacent thereto, and while in the process of traversing a catch basin, stepped on a man-hole cover over the basin, which collapsed or caved in, causing her right leg to go down into the catch basin. She claims she sustained bruises and a pulled muscle in her back.
*1129 The evidence discloses that the man-hole cover on this catch basin had a round lid in the middle of the cover which can be removed for inspection purposes. It was discovered, subsequent to the accident, that this circular piece was broken in several pieces, and the large rectangular cover had split in two.
Plaintiff claimed negligence on the part of the Drainage District in their having man-hole covers that were not safe to step upon, not having warning signs to warn the public of its being cracked, and allowing a dangerous condition to exist, and not taking the necessary steps to correct the situation when they knew or should have known of this danger.
Defendant denies that the man-hole cover or catch basin cover had been cracked previously, or that it knew of it being cracked, and if such was the case, it had no notice.
The evidence disclosed that approximately two years before the accident in question, this catch basin, including the cover, was rebuilt by a contracting firm doing work on the traffic signal lights in the City of Lake Charles. When the catch basin was rebuilt, there was no frame built on which to put the cover, and additionally, there were no braces for it. After the accident to the plaintiff, the Drainage District crew rebuilt the catch basin, installing a frame, braces, and cementing the cover so it would not be dislodged by trucks cutting the corner. All of defendants' witnesses testified that they had not worked on the man-hole cover since it was rebuilt two years before the accident. The evidence also developed that subsequent to the contractor's rebuilding the catch basin two years before the accident, no one from the Drainage District checked or inspected it.
The catch basin in question was located on the curb of Ryan Street, one of Lake Charles' main traffic and business arteries, near the northwest corner of the intersection of that thoroughfare with Mill Street. A city bus stops at this corner many times daily. Many people enter and leave the buses at this particular corner. Many persons, daily, traversed the catch basin.
On appeal, plaintiff-appellant asserts that the trial court committed error in refusing to charge the jury that proof of negligence is not necessary when an injury is caused by a defective thing in the custody of the defendant. Plaintiff-appellant relies on the case of Loescher v. Parr, La.Sup.Ct., 324 So.2d 441 (1975). In that case, a large magnolia tree located on defendant's property suddenly toppled over onto plaintiff's car, causing damage thereto. It was discovered, after the accident, that the interior of the tree was rotted out, although this fact had not been, and indeed could not have been, ascertained by the owner of the tree upon simple inspection. Thus, defendant could not be charged with negligent conduct, or even inattention on his part. The Supreme Court analogized the situation to that of an owner of a building who is held to "strict liability" for a defect in his building which causes injury to an innocent victim. Additional analogy was made to a parent being held liable for the conduct of a minor child, even without negligence on the part of the parent, and the owner of an animal being liable for the harm done by that animal even though the owner himself was not personally negligent.
As a pure matter of logic, the facts of this case appear to be indistinguishable from Loescher. If Loescher holds, as indeed it does seem to hold, the custodian of a defective thing which causes damage to an innocent victim is responsible to that victim, just as the owner of the thing would be. In the case at bar, there is no question but that the man-hole cover and the catch basin cover were defective. The Gravity Drainage District had control and custody[1] *1130 of it, although the City of Lake Charles was the owner of the catch basin, and the defect did cause some damage to the plaintiff, although very slight damage. The following language from Loescher is pertinent:
"The fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others."
The main issue is whether the Supreme Court intended that the Loescher doctrine should be applied, or extended, to cases involving property owned by, supervised by, or in the custody of, public bodies such as the State Highway Department, municipalities, police juries, gravity drainage districts, etc. Loescher made no mention of the long line of jurisprudence to the effect that actual or constructive notice to a public body is a prerequisite to its tort liability. In Doucet v. State, Department of Highways, 309 So.2d 382 (La.App. 3 Cir. 1975), 309 So.2d at Page 386, we took occasion to quote the Fourth Circuit Court of Appeal as correctly stating the applicable rule in Garrett v. Sewerage and Water Board of New Orleans, 235 So.2d 164 (La.App. 4 Cir. 1970):
"Our long settled jurisprudence is that in order for a public body (the defendant in this case is a public body) to be held liable for injuries caused by defects or defective conditions the plaintiff has the burden of pleading and proving both of the following: (1) such defects or conditions were patently dangerous or in the nature of a trap; and (2) the corporation had either actual or constructive notice of the same, actual notice being knowledge of the dangerous defects or conditions by a corporate officer or employee having the duty either to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities, and constructive notice being the fact that the defect or condition had existed for such a period of time it would have been discovered and repaired if the public body had exercised reasonable care."
As mentioned above, the Supreme Court, in Loescher, made no mention of the well-established rule of law of actual or constructive notice being a prerequisite of tort liability where public bodies are involved. The Supreme Court had an opportunity to do so, at least by way of dictum, in United States Fidelity and Guaranty Company v. State of Louisiana, Dept. of Hwys., et al, 339 So.2d 780 (La., 1976). In that case, there was a defect in the headache bar at the west end of the Atachafalaya River Bridge. The plaintiffs alleged, and apparently proved, actual and constructive notice to the Highway Department. Alternatively, plaintiff relied on Loescher v. Parr, supra. The Supreme Court, reversing the trial court, and the First Circuit Court of Appeal (Standard Brands Inc. v. Department of Highways, 329 So.2d 821, La.App., United States Fidelity & Guaranty Co. v. Department of Highways, 329 So.2d 826, La.App., Mull v. Davis, 329 So.2d 827, La. App.) found in a factual interpretation that the Highway Department did have actual and/or constructive knowledge of the defect, and observed, 339 So.2d at Page 786:
"Our finding of negligence and liability under Civil Code Article 2315 makes it unnecessary for us to consider the applicability of Louisiana Civil Code Article 2317 as applied in our decision in Loescher v. Parr. . ."
We note that the organ of the Court in USF & G was one of the three dissenting *1131 Justices in Loescher. However, the decision in USF & G was unanimous, with no concurring opinion by any of the Justices who comprised the majority in Loescher, to indicate that Loescher could be controlling in this matter, or that the doctrine of actual or constructive notice was no longer the law as a result of Loescher. We are of the opinion that had the Supreme Court intended that Loescher be applicable in suits against public bodies, overruling the line of jurisprudence requiring actual or constructive notice, the USF & G case would have been an appropriate vehicle to do so.
To our knowledge, of all the cases in which the rule of Loescher was urged, only three allowed recovery under the Loescher doctrine. None of these cases involved a public body. Fidelity & Guaranty Ins. Co. v. Central Plumbing & Heating, et al., 339 So.2d 904 (La.App. 3 Cir. 1976), involved a defective roof causing damage to the plaintiff's property. In Glorioso v. Chandler, 337 So.2d 269 (La.App. 2 Cir. 1976), a falling portion of defendant's building caused damage to plaintiff's party wall. In Derouen v. Southern Pacific, 351 So.2d 300 (La.App. 3 Cir., 1977), we applied Loescher where a defect in a railroad crossing (a protruding spike) caused damage to a passenger in an automobile which was traversing the crossing.
Other cases have denied the application of Loescher for various reasons. For example: Graham v. Allied Chemical Corp., 341 So.2d 1196 (La.App. 1 Cir. 1977) (fault of the victim); Woodward v. First of Georgia Ins. Co., 333 So.2d 709 (La.App. 2 Cir., 1976) (negligence under Article 2315); Vidrine v. Missouri Farm Ass'n, 339 So.2d 877 (La. App. 3 Cir. 1976) (there was no defect in the thing causing injury); Tiger Well Service v. Kimball Production Co., 343 So.2d 1153 (La. App. 3 Cir. 1977) (fault of a third party); Jinks v. McClure, et al., 344 So.2d 675 (La. App. 3 Cir. 1977) (fault of a third party); Parker v. Hanks, 345 So.2d 194 (La.App. 3 Cir. 1977) (fault of victim); Panek v. Gulf Ins. Co., 341 So.2d 46 (La.App. 3 Cir. 1976) (fault of third party).
Our review of the jurisprudence reveals no case where the Loescher rule was applied to permit recovery against a public body even though no actual or constructive notice was attributable to that public body. We are of the opinion that until the doctrine of actual or constructive notice is overruled, it is still the law, despite the theoretical similarity of Loescher to a case such as the one at bar. We further feel that to impose the Loescher rule on public bodies would have chaotic results because of their vast operations and the extensive properties owned, supervised, or in their custody and control.
Counsel for plaintiff, Janice Gallien, at oral argument, conceded that the defendant Drainage District was not liable to plaintiff under Article 2315 if plaintiff had no knowledge, actual or constructive, of an alleged defect in the catch basin cover. Counsel contends, however, that the defense of lack of notice to the Drainage District does not enure to its insurer, Commercial Union Insurance Company. Counsel cites no authority to substantiate this contention, and we have been unable to find any. Accordingly, we see no merit in plaintiff's argument on this issue. Absent a statutory or jurisprudential exception, a public liability insurer stands in the shoes of its insured. Noel v. State, La., 284 So.2d 587 (1973); LSA-R.S. 22:655.
With reference to the issue of whether or not the Gravity Drainage District had actual or constructive notice of the defect, we find that a reasonable evidentiary basis existed for the jury to conclude that the Drainage District did not have prior actual or constructive notice of the defect. The Drainage District presented evidence tending to establish that it had no such notice. Mrs. Lester Shea, the District's office manager for twenty or more years, who made a record of all complaints filed, testified that her records from July, 1974, to the date of the accident, were void of any complaint or complaints as to the catch basin involved. The District's superintendent testified that his records contained absolutely no complaints whatsoever. Defendant's foreman testified that he had no recollection of any problem as far as that catch basin was concerned. Other District employees testified that they had never *1132 done repair work thereon. Hence, ample evidence is in the record for a jury finding that the Drainage District had no notice, actual or constructive, of a defect in the catch basin.
Plaintiff has also urged the doctrine of res ipsa loquitur as being applicable in this case. We reject that argument. We are of the opinion that inasmuch as the Drainage District had no notice of the defective condition of the catch basin, the plaintiff knew as much about the danger as the Drainage District did. Accordingly, the doctrine of res ipsa loquitur is not applicable. Further, the Drainage District was not the owner of the catch basin; it had not built the catch basin or designed it. The catch basin itself is not an inherently dangerous instrumentality or substance. Accordingly, the burden of proof was and remained upon the plaintiff to prove negligence of the Drainage District. Plaintiff failed to do so.
For the foregoing reasons, the judgment of the trial court, dismissing plaintiff's demands, is affirmed.
All costs are assessed against the plaintiff-appellant.
AFFIRMED.
NOTES
[1] It is evident from the record that the repairs and maintenance of the man-hole cover came under the supervision of the Drainage District. Although it is undisputed that the City of Lake Charles owned the catch basin and man-hole cover involved herein, it is equally evident that the Drainage District had custody of and had assumed responsibility for the repairs and maintenance of the catch basin. Even the superintendent of the Drainage District, a Mr. Harless, admitted, at Page 204 of the record, that it was the District's duty to inspect the catch basin, although he admitted that they had not inspected it after it was rebuilt approximately two years before the accident. In his words the Drainage District had "inherited" responsibility for repairs and maintenance of the drainage system of the City of Lake Charles, of which the man-hole cover involved herein was a part.