DOMENGEAUX, Judge,
dissenting.
I respectfully dissent, from the views of my brethren. I would reverse the judgment of the District Court.
The principal opinion reasons that this accident occurred in one of two ways: (1) Either the two steel plates comprising the manhole cover were not positioned properly on their frame, or (2) The cover or frame itself was defective. The opinion then completely rules out (2), the presence of a defect, with which I agree under the facts of this case. This leaves the first proposition as the explanation for the accident. The principal opinion then finds liability on the part of the Town, not on the basis that the manhole cover was not positioned properly, but on the basis that the employees who conducted the inspection breached “some duty” of ascertaining that the manhole covers were not properly positioned. ■
I have difficulty with this approach based upon my appreciation of the facts of this case and my appreciation of the doctrine of res ipsa loquitur.
Res ipsa loquitur was recently discussed in Hancock v. Safeco Insurance Company, 368 So.2d 1162 (La.App. 3rd Cir. 1979), writ denied 369 So.2d 1377 (La.1979), wherein it was stated:
“Res ipsa loquitur is a rule of circumstantial evidence which is applied in eases where the facts are such as to indicate that the negligence of the defendant, rather than some other as-piausible explanation, is the most probable cause of *236 the injury. The principle serves as an aid to the plaintiff because, when properly applied, it gives rise to an inference of negligence which the plaintiff places in the scales along with the other facts of the case in order to prove his position by a preponderance of the evidence. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972).
The test of applying res ipsa loquitur is simply: Do the facts of the case indicate that the negligence of the defendant is the most plausible explanation of the accident? Stated differently, the test is: Are the facts of the case such as to suggest an explanation for the accident, other than the negligence of the defendant, which is just as plausible as one explaining the accident in terms of the defendant’s negligence? When it can be shown reasonably that the accident could have occurred as a result of one of two or more causes, the rule cannot be invoked. Taylor v. CNA Insurance Group, 300 So.2d 479 (La.1974); Boudreaux v. American Insurance Company, supra.”
I do not think that the facts of this case indicate that the negligence of the defendant is the most plausible explanation for the accident. In fact, I do not think that there is any indication of negligence' on the defendant’s part whatsoever.
There is no basis from which one can draw the inference that the manhole cover was not properly positioned at the time defendant’s employees inspected it. Without the cover being askew at that time, if in fact, it ever was askew, the defendant’s employees cannot be said to be negligent. Consequently, the reasoning of the principal opinion fails.
Looking to the uncontradicted facts contained in the record, it was clearly established that the Town rarely lifted up this manhole cover. At most, it would be lifted once or twice a year, in order to check out or repair the pumps which were housed in the manhole. It was also established that the manhole cover in question was not removed by Town employees at least for several weeks prior to the accident and that there were no accidents from the time of the last removal, until plaintiff’s passage over it. In fact, there never were any accidents since the time the manhole was installed in 1949.
The pumps housed in the manhole were checked twice daily, once at around 7:30 A.M. and once at around 3:30 P.M.; but, those examinations consisted merely of taking meter readings from gauges located approximately 28 feet away from the manhole cover. The cover was not lifted at these examinations. It merely was looked at in order to make sure that it was still there and still in position.
Both’ of the employees who conducted the inspection on the morning of the accident testified that the manhole cover was in place. There is no evidence showing, or even remotely tending to show, that these employees did not use reasonable care in carrying out their morning inspection.
This, apparently, is where the principal opinion uses res ipsa loquitur, i. e. to advance the proposition that, inasmuch as the employees thought that the manhole cover was in place at the time of the inspection, and, inasmuch as the cover caught onto the undercarriage of plaintiff’s car about an hour after the inspection, the inspection of the employees must have been negligent.
I disagree with this assumption under the evidence in this case. First, because the manhole cover was rarely removed by Town employees, and was not removed by Town employees for at least several weeks prior to the occurrence, it is not at all unlikely that the cover was made to come loose by the actions of some third party, as, for example, vandals or mischief makers, if it ever, in fact, did come loose. After all, this is not a situation involving a patient in an operating room or a fire in the kitchen of a restaurant. As pointed out in the concurring opinion, the cover was accessible at all times to members of the public and in constant public use. Second, because there were no mishaps with this manhole cover up until the time plaintiff’s vehicle passed over it, it seems likely that the time at which the manhole cover became askew by *237 the actions of the third party, if it ever was askew, must have been in close proximity to the time of plaintiff’s passage over it. There is absolutely no basis in the record to tell when the manhole cover might have been made to come loose. In essence, it seems to me that it is just as reasonable, under the evidence presented, to conclude that the accident occurred because some third party made the manhole cover come ajar after the morning inspection, as it is to find that the accident occurred because the purportedly ajar manhole cover was not discovered at the morning inspection. I, therefore, do not feel that the City should be found liable under the very weak factual setting presented by this case.
I also disagree with the views expressed in the concurring opinion that liability should be imposed under La. C.C. art. 2317, as interpreted by the Louisiana Supreme Court in Loescher v. Parr, 324 So.2d 441 (La.1975).
In Gallien v. Commercial Union Insurance Company, 353 So.2d 1127 (La.App. 3rd Cir. 1977), writ denied 354 So.2d 1379 (La. 1978), this Court held that the Loescher rule of C.C. art. 2317 did not apply to public bodies or municipalities. In that case, the doctrine of actual or constructive notice was discussed, and the following language from Garrett v. Sewerage & Water Board of New Orleans, 235 So.2d 164 (La.App. 4th Cir. 1970) was quoted:
“Our long settled jurisprudence is that in order for a public body ... to be held liable for injuries caused by defects or defective conditions the plaintiff has the burden of pleading and proving both of the following: (1) such defects or conditions were patently dangerous or in the nature of a trap; and (2) the corporation had either actual or constructive notice of the same, actual notice being knowledge of the dangerous defects or conditions by a corporate officer or employee having the duty either to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities, and constructive notice being the fact that the defect or condition had existed for such a period of time it would have been discovered and repaired if the public body had exercised reasonable care.” [Citations omitted]
I feel, as did my brethren in Gallien, that until this well established and well entrenched doctrine is overruled, it is still the law.
For the above reasons, I would reverse the judgment of the trial court and order plaintiff’s suit dismissed at his costs.
I respectfully dissent.